HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division
JESUS A. OSETE
Principal Deputy Assistant Attorney General
ROBERT J. KEENAN (SBN 151094)
Senior Counsel
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Telephone: (202) 305-2566
E-Mail: robert.keenan@usdoj.gov

CRAIG H. MISSAKIAN
United States Attorney
450 Golden Gate Avenue
Box 36055
San Francisco, CA 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-6748

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA,<br>Plaintiff,<br>v.<br>UNITED STATES DEPARTMENT OF JUSTICE, *et al.*,<br>Defendants. | Case No. 3:25-cv-04863-CRB<br>**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br>[Fed. R. Civ. P. 12(b)(1), (b)(6)]<br>DATE: TBD<br>TIME: 10:00 a.m.<br>PLACE: Courtroom 6, 17th Floor |

Defendants United States Department of Justice; Pamela Bondi, in her official capacity as the United States Attorney General; Harmeet K. Dhillon, in her official capacity as the Assistant Attorney

/ /

/ /

/ /

General for DOJ's Civil Rights Division; and the United States of America (collectively, "Defendants") hereby submit their Reply Brief in support of the pending Motion to Dismiss.

DATE: December 8, 2025.

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

JESUS A. OSETE
Principal Deputy Assistant Attorney General,
Civil Rights Division

*/s/ Robert J. Keenan*

ROBERT J. KEENAN
Senior Counsel
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Telephone: (202) 305-2566
E-Mail: robert.keenan@usdoj.gov

*Attorneys for Defendants*

**TABLE OF CONTENTS**

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. The State Has Failed To Establish Standing ..... 1

A. The Status of Public School Districts in California ..... 2

B. The State Has Not Alleged a Cognizable "Actual" Injury or an "Imminent" Pre-Enforcement Injury to a Sovereign Interest or to Its Right to Federal Funding ..... 2

1. Alleged Sovereign Interest & Potential Loss of Federal Funding ..... 3

2. No Actual Injury ..... 3

3. No Cognizable Pre-Enforcement Injury ..... 4

II. The State's Claims Are Not Ripe ..... 8

III. The State's APA Claim Is Not Reviewable ..... 9

IV. The State's "Ultra Vires" Claims Are Not Reviewable ..... 11

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Cases**

*Advanced Integrative Medical Science Institute, PLLC v. Garland*, 24 F.4th 1249 (9th Cir. 2022) .......... 10

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592 (1982) .......... 3

*Arizona v. Yellen*, 34 F.4th 841 (9th Cir. 2022) .......... 14

*AT&T Co. v. EEOC*, 270 F.3d 973 (D.C. Cir. 2001) .......... 10

*Belanger v. Madera Unified School District*, 963 F.2d 248 (9th Cir. 1992) .......... 2

*Bennett v. Spear*, 520 U.S. 154 (1997) .......... 9

*Chevron USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), *overruled* by *Loper Bright Ent. v. Raimondo*, 603 U.S. 369 (2024) .......... 12

*City and County of San Francisco v. Barr*, 965 F.3d 753 (9th Cir. 2020) .......... 6

*City and County of San Francisco v. Garland*, 42 F.4th 1078 (9th Cir. 2022) .......... 6

*City of Los Angeles v. Barr*, 941 F.3d 931 (9th Cir. 2019) .......... 6

*City of San Diego v. Whitman*, 242 F.3d 1097 (9th Cir. 2001) .......... 11

*City of South Lake Tahoe v. California Tahoe Regional Planning Agency*, 625 F.2d 231 (9th Cir. 1980) .......... 5

*Department of Commerce v. New York*, 588 U.S. 752 (2019) .......... 3

*Diamond v. Charles*, 476 U.S. 54 (1986) .......... 9

*Federal Express Corp. v. Department of Commerce*, 39 F.4th 756 (D.C. Cir. 2022) .......... 12

*Flaxman v. Ferguson*, 151 F.4th 1178 (9th Cir. 2025) .......... 9

*Haaland v. Brackeen*, 599 U.S. 255 (2023) .......... 1, 3

*Holistic Candlers & Consumers Association v. FDA*,
664 F.3d 940 (D.C. Cir. 2012) ..... 11

*Independent Equipment Dealers Association v. EPA*,
372 F.3d 420 (D.C. Cir. 2004) ..... 11

*Johnson v. San Diego Unified School Dist.*,
217 Cal. App. 3d 692 (1990) ..... 2

*Kelerchian v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
655 F. Supp. 3d 334 (E.D. Pa. 2023) ..... 11

*Kohn v. State Bar of California*,
87 F.4th 1021 (9th Cir. 2023) ..... 2

*La. Pub. Serv. Comm'n v. FCC*,
476 U.S. 355 (1986) ..... 13

*Leedom v. Kyne*,
358 U.S. 184 (1958) ..... 12, 13

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..... 3

*Missouri v. Harris*,
847 F.3d 646 (9th Cir. 2017) ..... 7

*Murphy Co. v. Biden*,
65 F.4th 1122 (9th Cir. 2023) ..... 12

*NRC v. Texas*,
605 U.S. 665 (2025) ..... 11, 12, 13, 14

*Planned Parenthood Great Northwest v. Labrador*,
122 F.4th 825 (9th Cir. 2024) ..... 8, 9

*Pollack v. Hogan*,
703 F3d 117 (D.C. Cir. 2012) ..... 12

*Reliable Automatic Sprinkler Co. v. Consumer Product Safety Commission*,
324 F.3d 726 (D.C. Cir. 2003) ..... 11

*Safer Chemicals, Healthy Families v. EPA*,
943 F.3d 397 (9th Cir. 2019) ..... 7

*Scott v. Pasadena Unified School District*,
306 F.3d 646 (9th Cir. 2002) ..... 8

*Sierra Club v. Trump*,
963 F.3d 874 (9th Cir. 2020), *vacated and remanded on other grounds, sub. nom. Biden v. Sierra Club*, 142 S. Ct. 46 (2021) ..... 13

*Sierra Club v. Whitman*,
268 F.3d 898 (9th Cir. 2001) ..... 11

*Sisseton-Wahpeton Oyate of Lake Traverse Reservation v. United States Corps of Engineers*, 888 F.3d 906 (8th Cir. 2018) ........ 10

*Solar Turbines Inc. v. Seif*, 879 F.2d 1073 (3d Cir. 1989) ........ 11

*Susan B. Anthony List v. Driehaus,* 573 U.S. 149 (2014) ........ 4, 5

*Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134 (9th Cir. 2000) ........ 8

*Twitter, Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022) ........ 8

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ........ 13

**Statutes**

20 U.S.C. § 1682 ........ 7
42 U.S.C. § 2000c-6 ........ 6, 14
42 U.S.C. § 2000h-2 ........ 6, 14

**Other Authorities**

Cal. Const. Art. III.C ........ 2
Cal. Const. Art. IX, § 14 ........ 2
Cal. Educ. Code § 35162 ........ 2
Cal. Educ. Code § 35200 ........ 2
Cal. Govt. Code § 970(c) ........ 2

**Regulations**

28 C.F.R. § 0.50 ........ 14
28 C.F.R. § 0.51(b) ........ 14

## INTRODUCTION

In a rush to the courthouse, the State filed this complaint to drag the Federal Defendants into court even though it had suffered no actual injury and was not faced with any imminent risk of injury to any legitimate state interest. The result is a complaint with ill-conceived, speculative, and in some cases transparently hypothetical claims. Because the State has suffered no cognizable injury, it lacks standing to pursue any of the claims. For the same reason, the claims are not ripe for adjudication. In addition, the APA and ultra vires claims fail to state a claim for relief. For all of these reasons, the Court should dismiss the complaint in its entirety.

## ARGUMENT

### I. The State Has Failed To Establish Standing

In their motion, Defendants explained that the State lacked standing to pursue any of its claims because it suffered no actual injury and was not faced with any imminent risk of injury to any legitimate state interest as a result of the DOJ Letter. (Mtn. at 5-16.) In its opposition, the State makes important concessions that narrow and focus the issue of standing down to essentially one issue: whether there was an imminent threat of a cognizable pre-enforcement injury. The State now concedes, as it must, that it does not have standing to enforce equal protection rights of its own or third-party standing as *parens patriae* to defend the equal protection rights of its residents against the Federal Government. (Opp. at 12-13.) *See Haaland v. Brackeen*, 599 U.S. 255, 294-96 (2023). By omission, the State also tacitly concedes that it lacks standing to defend a quasi-sovereign interest to defend the health and well-being of its students because the alleged future injury does not affect "a truly distinct interest of the State *as a whole*." (*See* Mtn. at 11-12 (citing *Washington v. FDA*, 108 F.4th 1163, 1176-78 (9th Cir. 2024).)

The State does not rest its claim to standing based upon any *actual* injury suffered by the State or a school district. (*See* Opp. at 5-11.) Nor can it, for all of the reasons set forth in the motion to dismiss. Instead, the State argues that it has standing due to a "threatened," "future," "pre-enforcement" injury to an alleged sovereign interest to control its public school districts and an interest in continued receipt of "as yet unidentified" federal funding. (*Id.*) As explained below, however, the State's arguments lack merit. The DOJ Letter did not threaten any *imminent* and *certain* pre-enforcement injury.

**A. <u>The Status of Public School Districts in California</u>**

Because the Defendants' motion occasionally differentiates between the State and its LEAs, the State argues that a threat to public school districts is tantamount to a threat to the State because, under California law, school districts are regarded as an "arm of the State." (Opp. at 7-8.) Defendants were mindful of the State's case authorities and took care to frame its motion accordingly by arguing that the "[DOJ] letter has not caused any injury or threatened any imminent cognizable injury to *the State* ***<u>or</u>*** *any public school district*." (*See* Mtn. at 1, lines 22-23 (emphases added).)

Ultimately, the State's case law on this point is largely irrelevant because *neither* the State *nor* its school districts have suffered any actual injury or imminent future enforcement injury. Because the State's clarification is irrelevant to the motion, we won't belabor the point here, but Defendants do disagree with the State's argument regarding the legal status of public school districts in California as it relates to standing. First, the State's argument relies on inapposite case law regarding Eleventh Amendment immunity, and those cases rest on a test that was recently overruled. (*See* Opp. at 7 (citing, *e.g., Belanger v. Madera Unified School District*, 963 F.2d 248, 254 (9th Cir. 1992) (applying the *Mitchell* test).) *See also Kohn v. State Bar of California*, 87 F.4th 1021, 1025-32 (9th Cir. 2023) (overruling *Mitchell* test). Second, various provisions from California's constitution, Code, and case law make clear that the school districts are not mere arms of the State, but distinct and separate legal entities. *See, e.g.*, Cal. Const. Art. IX, § 14 (authorizing incorporation of school districts); Cal. Const. Art. III.C (school boards may enact local taxes); Educ. Code § 35162 (districts may sue and be sued and hold and convey property); § 35200 (districts are liable for all district debts and contracts); Govt. Code § 970(c) (districts shall pay judgments out of their own funds); *see also Johnson v. San Diego Unified School Dist.*, 217 Cal. App. 3d 692, 698-700 (1990) (State does not have respondeat superior liability for the acts of a school district).

**B. <u>The State Has Not Alleged a Cognizable "Actual" Injury or an "Imminent" Pre-Enforcement Injury to a Sovereign Interest or to Its Right to Federal Funding</u>**

In its opposition, the State identifies two interests that it claims were subject to an "imminent" injury due to the DOJ Letter: (1) a sovereign interest in the enforcement of its own laws, and (2) a feared loss of "as yet unidentified" federal funding. (*See* Opp. at 5-11; Comp. ¶ 135.) Defendants agree with the State that standing as to all claims can be addressed together. As explained below, the complaint fails

to allege any *actual* injury or *imminent* threatened injury to the State's alleged interests, and the Court should dismiss all of the claims accordingly.

### 1. **Alleged Sovereign Interest & Potential Loss of Federal Funding**

The State notes that it has a "sovereign interest in upholding [Cal. Educ. Code §] 221.5(f)." (*See* Opp. at 5, 12.) In our motion, Defendants acknowledged as much when we said that "[s]tates have a 'sovereign interest' in retaining the authority to "exercise sovereign power over individuals and entities within [their] jurisdiction,' including 'the power to create and enforce a legal code.'" (*See* Mtn. at 9, 11 (citing *Washington v. FDA*, 108 F.4th 1163, 1176 (9th Cir. 2024); *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982)).) However, a State's sovereign interest in the ability to enforce its laws provides a basis for standing only if the State's authority to govern has suffered a cognizable injury. *See FDA*, 108 F.4th at 1174, 1176-77; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("An injury in fact is 'an invasion of a legally protected interest' that is 'concrete and particularized,' and '*actual or imminent*, not conjectural or hypothetical.'").

Likewise, in some cases, the loss of federal funding is an interest that may also support standing. *See, e.g., Department of Commerce v. New York*, 588 U.S. 752, 766-67 (2019). Again, however, hypothetical and imaginary losses to such funding do not suffice to support Article III standing. The State must allege that it suffered an actual loss or was under imminent threat of losing such funding.

### 2. **No Actual Injury**

Because the potential for conflicts between federal law and the laws of any given State are innumerable, a State's sovereign interest in the enforcement of its own laws is narrowly construed as a basis for standing. *See, e.g., Haaland*, 599 U.S. at 295-96 (Texas lacked standing to challenge ICWA based on claim that it forced Texas to violate its own constitutional obligations and "discriminate against its citizens or lose federal funds"); *FDA*, 108 F.4th at 1176-77 (Idaho lacked standing to challenge FDA regulation that was contrary to Idaho law because the alleged injury to the state's interest in enforcing its laws was "indirect[]" and speculative); *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) ("[N]either the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement.").

As explained in the motion, the complaint in this case does not—and cannot—allege facts establishing that DOJ's Letter caused any direct, "*actual*" injury to the State's "authority to govern." *FDA*, 108 F.4th at 1177. The letter did not address the constitutionality of any California statute. (*See* Compl., Ex. "A.") Moreover, the State admits that "the DOJ's assertions" regarding CIF Bylaw 300.D's legality "are not themselves law," and the State communicated that view to State LEAs. (Compl. ¶¶ 84-85.) The Letter does not command any school district to cease implementation of Bylaw 300.D. Thus, the State cannot now claim the Letter has nullified or preempted California law. Section 221.5(f) remains in effect, and the complaint does not allege that DOJ's Letter has impaired the State's ability to enforce its Code. The complaint also does not allege that any fines have been assessed against the State or any school district for failure to respond to or comply with the Letter. Likewise, the complaint does not allege that Defendants have withheld any federal funding from the State or any school district as a result of their failure to respond to or comply with the Letter.

### 3. <u>No Cognizable Pre-Enforcement Injury</u>

In light of this record, the State tries to carry its burden by claiming that the complaint establishes a "pre-enforcement injury." (Opp. at 8-11.) That claim also lacks merit. The alleged injuries to the State's alleged sovereign interest and the receipt of federal funding are not cognizable pre-enforcement injuries.

An allegation of a pre-enforcement injury "*may*" satisfy Article II's standing requirement, but only "if the threatened injury is 'certainly impending' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014); *Lujan*, 504 U.S. at 560 (the injury must be "imminent"); *see also Driehaus*, 573 U.S. at 159 (pre-enforcement review is permitted "under circumstances that render the threatened enforcement *sufficiently imminent*"). A mere possibility of future enforcement will not do. *Driehaus*, 573 U.S. at 164 (likelihood of enforcement must be "substantial").

The DOJ Letter did not present a threat to the State's alleged sovereign interest that was "imminent" and "certainly impending." (*See* Comp., Ex. "A.") It also does not threaten any imminent lawsuit or administrative enforcement action against any school district or the State. (*Id.*) It *advised* the school districts of the following: (1) Defendants' view that CIF Bylaw 300.D is unconstitutional because it deprives female students of the right to equal protection of the laws under the Equal Protection Clause; (2) the unimpeachable fact that, as state actors, public school districts "have an obligation to comply with

the Equal Protection Clause"; and (3) Defendant's view that adherence to the CIF Bylaw would "expose[] [them] to legal liability." (*Id.*)[1] "To ensure compliance" with the Equal Protection Clause "and avoid legal liability," the letter then states that the school districts "must certify that they will not implement" the bylaw. (*Id.*) In short, the Letter had an advisory function and an exploratory function, to ascertain the extent to which any California LEAs were implementing the Bylaw.

The language in the Letter is forward looking, "[t]o *ensure compliance* and avoid legal liability." The Letter does not suggest that any school district's past or then-current practices amounted to a violation of the Equal Protection Clause. Nor does the Letter inquire about the school district's prior implementation of the Bylaw. The failure of any LEA to respond to the Letter provides no independent basis for civil liability. The Letter also does not mention any penalty assessment or threaten to suspend or terminate any federal funding. The Letter, in fact, makes no mention of federal funding at all. Moreover, the State does not allege any history of Defendants challenging the CIF Bylaw based on an Equal Protection Clause challenge. Under *Driehaus*, 573 U.S. at 164, the lack of any such enforcement history undercuts the State's allegation that it was threatened with an imminent enforcement action.

The State seizes upon the phrase "avoid legal liability" as the primary basis for its pre-enforcement standing argument, but the State misconstrues the phrase. For example, that phrase is not a reference to the suspension or termination of federal funding; nor does it suggest that DOJ was just about to file a civil case against the school districts. If Defendants actually intended to make such threats, they could and would have done so in a more direct manner. Moreover, the mere risk of civil liability is not clearly sufficient to establish standing. *See, e.g., City of South Lake Tahoe v. California Tahoe Regional Planning Agency*, 625 F.2d 231, 239 (9th Cir. 1980).

Beyond the text of the Letter, the lack of any imminent enforcement action may be gleaned from two other sources, both of which indicate that the State lacks standing to pursue any of its claims. First, a comparison of this case to the facts of other cases, where the Federal Government actually terminated or at least gave formal notice of an intent to terminate funding, demonstrates the lack of any "imminent" injury here. *See, e.g.*, *City and County of San Francisco v. Garland*, 42 F.4th 1078, 1082-83 (9th Cir.

[1] The State balks at Defendants referring to the Letter as an "advisory letter," but this recitation demonstrates that the label is fair and accurate.

2022) (DOJ actually decided to withhold federal grant funds because the State could not certify compliance with an immigration-enforcement statute); *City and County of San Francisco v. Barr*, 965 F.3d 753, 758-60, 762 and n.2 (9th Cir. 2020) (*Barr I*) (DOJ gave formal notice and promulgated forms expressly conditioning eligibility for federal grant funds funding on submission of a certification form); *City of Los Angeles v. Barr*, 941 F.3d 931, 936-37 (9th Cir. 2019) (*Barr II*) (same).

In this case, DOJ did nothing but issue a single advisory letter. It got nowhere close to these types of formal administrative steps necessary to withhold federal funding relating to any federal program, and, again, it made no reference to federal funding or the termination thereof. Notably, the above-cited cases make no reference to concerns about the cities' standing to sue, because the cities properly waited until the loss of funding was truly "imminent," as Article III requires. More importantly, the cities were not prejudiced by doing so, as the above-cited opinions indicate that the cities were able to promptly obtain preliminary injunctive relief. *See, e.g.*, *Garland*, 42 F.4th at 1083 (the district court granted injunctive relief and summary judgment for the city, and the Circuit affirmed); *Barr I*, 965 F.3d at 759-60 (same).

Second, the imagined threat to the State's alleged sovereign interest in the enforcement of § 221.5(f) and its alleged right to "as yet unidentified federal funding" ignores key aspects of Defendants' statutory authority, which make clear that no civil enforcement action or termination of funding was "imminent." Apart from the funding available under Title IX, it's not clear what federal funding (if any) might be conditioned on compliance with any particular view of the Equal Protection Clause. The DOJ's Letter cites to no statutory authority that establishes any such funding or conditional funding authority. The complaint also fails to cite to any such authority. Indeed, the State alleges that Defendants have no such authority under any statute. (*See* Comp. ¶¶ 130-31, 138-39.)

There are statutes that authorize DOJ to intervene in or file civil actions to vindicate federal civil rights. However, excepting Title IX (which is addressed below), those statutes are not tied to any funding program and impose various conditions on Defendants' filing of any civil case, and the complaint does not allege any of those conditions have been satisfied. For example, in 42 U.S.C. § 2000h-2, the Attorney General's authority is limited to *intervening* in actions alleging equal protection violations. In 42 U.S.C. § 2000c-6(a)(1), the Attorney General is authorized to file a civil action in the name of the United States to address reported denials of equal protection in the public school context, but only if, among other

conditions, the Attorney General gives the subject school board notice of a complaint and gives it "a reasonable time to adjust the conditions alleged in such complaint." Having failed to allege that any of these conditions occurred under either statute, the State has no legitimate basis for claiming that Defendants were imminently about to file a separate civil action against the State or any school district.

Under Title IX, the preconditions governing any civil action, administrative enforcement action, or the termination of Title IX funding are even more onerous.[2] Any future funding loss under Title IX is even more speculative and not "certainly imminent" because Title IX itself requires the Department to engage in a multi-step process to terminate any funding. It must first notify the funding recipient of a finding of a "failure to comply" with Title IX, and also "determine[] that compliance cannot be secured by voluntary means." 20 U.S.C. § 1682. To terminate funding the statute also separately requires an "express finding on the record, after opportunity for hearing, of a failure to comply." *Id.* Absent an allegation that any of these administrative steps had occurred, the State has no legitimate basis for claiming that a loss of Title IX funding was "imminent" at the time it filed this case.

Finally, in light of the foregoing, it bears special note that the State does not address the two prudential reasons that Defendants cited as to why the Court should reject the State's expansive claim to standing: (1) the availability of more suitable plaintiffs, and (2) the prudential doctrine of constitutional avoidance. (*See* Mtn. at 13.) The availability of more suitable plaintiffs is a relevant factor in deciding whether to exercise jurisdiction in this kind of case. *See Missouri v. Harris*, 847 F.3d 646, 652 (9th Cir. 2017) ("*parens patriae* standing is inappropriate where an aggrieved party could seek private relief"). Likewise, because the United States has pursued litigation under Title IX against CIF and the State in a separate case following a Department of Education's investigation and referral to the Department of Justice, the State's filing of this case to force litigation of a *constitutional* equal protection claim improperly usurps Defendants' discretionary authority in filing such a claim. *See, e.g.*, *Safer Chemicals, Healthy Families v. EPA*, 943 F.3d 397, 410 (9th Cir. 2019) ("The requirement of Article III standing aids the federal judiciary to avoid intruding impermissibly upon the powers vested in the executive and legislative branches, by preventing courts from issuing advisory opinions not founded upon the facts of a

[2] We hasten to add that the DOJ's Letter makes no reference to Title IX. Nor does the State's complaint. The State first raised the issue of Title IX funding in its opposition brief.

controversy between truly adverse parties."). Deference to the Defendants' discretion and judgment is warranted here because, if we were to pursue a civil action raising a constitutional Equal Protection Claim against the State's transgender-sports policy, it is doubtful we would limit the challenge to CIF Bylaw 300.D alone (as the State has done in Count One of its complaint), and there may be good reason to include other defendants in any such case.

For all of these reasons, the State lacks standing, and the Court should dismiss all of its claims for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).

## II. <u>The State's Claims Are Not Ripe</u>

The ripeness doctrine effectuates Article III's jurisdictional limitations by requiring courts to avoid the "premature adjudication" of matters that have not ripened into actual "cases or controversies." *Scott v. Pasadena Unified School District*, 306 F.3d 646, 662 (9th Cir. 2002). When, as here, the plaintiff has suffered no injury-in-fact, the ripeness requirement may overlap to a degree with the standing analysis. *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc); *see also Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022) ("[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry.").

As we noted in the motion, that is certainly true here. Thus, because the complaint fails to allege that the State has suffered any cognizable injury-in-fact or any imminent, clearly impending injury as a result of the DOJ's Letter, the State's claims must also be dismissed because they are not "ripe" for review.

The State cites to *Planned Parenthood Great Northwest v. Labrador*, 122 F.4th 825, 840 (9th Cir. 2024), to explain why its claims are ripe. (*See* Opp. at 14-15.) However, that case is easily distinguished because the plaintiff in that case alleged a violation of his right to free speech. *Id*. at 832. "Where … plaintiffs bring a pre-enforcement challenge under the First Amendment, 'unique standing considerations' ... 'tilt dramatically toward a finding of standing.'" *Id*. at 836. "That is because 'a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury.'" *Id*. In other words, the injury alleged in that case was "concrete" and 'actual," not abstract or speculative. *Id*. at 839. These legal rules render *Planned Parenthood* irrelevant to this case. Here, the State suffered no cognizable injury, and none may be assumed here based on this type of "chilling" theory.

As to prudential ripeness, Defendants again note that there are prudential reasons for the Court to decline to exercise jurisdiction in this case. "Unlike Article III ripeness, 'prudential considerations of ripeness are discretionary.'" *Flaxman v. Ferguson*, 151 F.4th 1178, 1188 (9th Cir. 2025) (citing *Planned Parenthood*, 122 F.4th at 840). "Prudential ripeness turns on two considerations: (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Id*. (cleaned up).

In this case, Count One of the complaint presents an Equal Protection Clause claim that is not at all "fit for purpose." It seeks declaratory relief limited to CIF Bylaw 300.D alone, without asking the Court to also consider whether § 221.5(f) also violates the Equal Protection Clause. If Defendants were to press such a claim, it is unlikely they would frame it in such a crabbed fashion, and the requested injunctive relief is a waste of time if it doesn't also resolve the constitutionality of the underlying state statute. Since Defendants were the first to raise the Equal Protection Clause issue in the DOJ Letter, they should be permitted the discretion to decide whether to pursue that claim and if so when and how to do it. *See generally Diamond v. Charles*, 476 U.S. 54, 62-63 (1986) (noting that the nature of the alleged injury is important, and autonomy of the party with the most interest in asserting a given claim deserves some deference).

## III. <u>The State's APA Claim Is Not Reviewable</u>

In addition to the lack of standing and ripeness, Defendants' motion explained that Count Five should be dismissed because DOJ's letter is not a reviewable under the APA for two reasons: (1) the Letter is not a "final agency action"; and (2) the decision to pursue a civil action against a school district or the State is committed to DOJ's sole discretion. The State's response to those arguments lacks merit, and the Court should dismiss Count Five on these grounds as well.

As explained in the motion, "two conditions must be satisfied for agency action to be 'final': (1) the action must mark the "consummation" of the agency's decision–making process; and (2) the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow." (Mtn. at 19 (citing *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). In its opposition, the State claims that Defendants essentially conceded that the DOJ Letter satisfies "the first *Bennett* prong" because they did "not dispute that the … Letter marks the 'consummation' of the federal government's 'decision-

making process.'" (*See* Opp. at 16.) That is incorrect. In the motion, Defendants said that, "[b]eyond its advisory function, the letter was merely part of a fact-finding effort to determine which school districts are complying with the [CIF] bylaw and which are not." (Mtn. at 20.) We later made clear that the Letter was "not the conclusion of [the fact-finding process]." (*Id.*)

Beyond that, the State's opposition is conclusory and relies on the same mischaracterization of the Letter as found in the complaint. However, the Letter is attached to and incorporated into the complaint. (*See* Comp., Ex. "A.") Thus, there can be no good faith dispute about its contents. In this case, the DOJ Letter does not purport to be a final legally-controlling "determin[ation]" of the school districts' obligations or liabilities. Indeed, it advised the school districts *not* that they are liable, but only that they "*are exposed to* legal liability" *if* they comply with the CIF bylaw. (*Id.*) Thus, by its own terms, the Letter plainly does not "*determine*" the school districts' obligations or liabilities, "*definitively*" or otherwise. Beyond its advisory function, the Letter was merely the initial step as part of a fact-finding effort—not the conclusion of it—to determine which school districts were complying with the Bylaw.

No legal consequences flow from the Letter itself. The Letter does not purport to be a final rule or regulation. The Letter does not have the force or effect of law, does not bind the school districts, and does not even bind DOJ. Nor does a school district's failure to respond to the Letter give rise to any independent civil liability. Indeed, as the State admits in its complaint, the "assertions" in DOJ's letter "are not in themselves law." (Compl. ¶ 84.) Thus, there is nothing about the Letter that qualifies it as a "final agency action." *See Sisseton-Wahpeton Oyate of Lake Traverse Reservation v. U.S .Corps of Engineers*, 888 F.3d 906, 915 (8th Cir. 2018) (agency letter explaining to Tribe how it applied the law on a prior land-use permit was not a final agency action); *AT&T Co. v. EEOC*, 270 F.3d 973, 976 (D.C. Cir. 2001) (EEOC's letter advising AT&T that its personnel policy violated the law and that a failure at conciliation would lead to referral to EEOC's legal department, was not a "final" agency action).

As explained in the motion, the Ninth Circuit and many other courts have held that similar types of agency letters do not qualify as a "final agency action." *See, e.g.*, *Advanced Integrative Medical Science Institute, PLLC v. Garland*, 24 F.4th 1249, 1252 (9th Cir. 2022) ("*AIMSI*") (DEA letter, issued in response to public inquiry, was *not* a final agency action even though it declared the DEA's view that the Right-to-Try Act "did not create any additional exemptions" regarding the administration of certain controlled

substances); *City of San Diego v. Whitman*, 242 F.3d 1097 (9th Cir. 2001) ("a letter written by the EPA, stating it planned to apply the Ocean Pollution Reduction Act to the City's future application for renewal of its wastewater discharge permit," was not a final agency action); *see also Holistic Candlers & Consumers Association v. FDA*, 664 F.3d 940, 944 (D.C. Cir. 2012) (FDA warning letters about a product's noncompliance with the law did not constitute final agency action); *Independent Equipment Dealers Association v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004) ("practical consequences, such as the threat of having to defend in an administrative hearing should the agency actually decide to pursue enforcement, are insufficient to bring an agency's conduct under [the court's] purview"); *Reliable Automatic Sprinkler Co. v. Consumer Product Safety Commission*, 324 F.3d 726, 731-32 (D.C. Cir. 2003) (agency letter announcing "preliminary determination" and requesting "voluntary corrective" measures was not final); *Solar Turbines Inc. v. Seif*, 879 F.2d 1073, 1081 (3d Cir. 1989) (EPA letter was not a final agency action because "even though the . . . letter seems to threaten civil and criminal liability upon noncompliance, no civil or criminal liabilities accrue"); *Kelerchian v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 655 F. Supp. 3d 334, 345-49 (E.D. Pa. 2023) (ATF letter to federally-licensed firearms dealer warning of potential criminal liability if he failed to comply with certain statutory provisions was not a "final agency action").

For the reasons explained in the motion, Defendants also maintain that Count Five must be dismissed pursuant to 5 U.S.C. § 701(a) the decision whether the Government should pursue an Equal Protection Clause challenge to the CIF Bylaw or § 221.5(f) is a matter properly "committed to [Defendants'] discretion by law." *See, e.g., Sierra Club v. Whitman*, 268 F.3d 898, 903 (9th Cir. 2001). Contrary to the State's argument, that rule does not turn on whether Defendants have opted to use their discretion to take an enforcement action or to refrain from doing so.

## IV. <u>The State's "Ultra Vires" Claims Are Not Reviewable</u>

In the motion to dismiss, Defendants explained that the State's ultra vires claims – Counts Two and Three – must be dismissed because they fail to allege (1) that DOJ's issuance of the advisory letter violated "a specific prohibition in a statute" and (2) that the State has no "meaningful and adequate opportunity for judicial review" if the Court declines to consider the ultra vires claims. (*See* Mtn. at 23-24 (citing *NRC v. Texas*, 605 U.S. 665, 681-82 (2025), and *Leedom v. Kyne*, 358 U.S. 184, 188-89

(1958)).) In its opposition, the State fails to address either point directly. (*See* Opp. at 19-21.) Instead, the State argues that *NRC* and *Leedom* do not even apply to the State's ultra vires claims, and it tries to shift the burden to Defendants to specify the statutory authority for DOJ's issuance of the letter. (*Id.*)

The State's arguments are without merit. *First*, the State is incorrect when it claims that *NRC's* and *Leedom*'s restrictions on the availability of ultra vires claims are "not relevant" because "there is no statute that precludes judicial review." (*See* Opp. at 19, lines 10-11; at 20-21.) The State's argument is based on the mistaken assumption that the so-called *Leedom* "exception" is an exception to a review-preclusive statute. It isn't. The *Leedom* "exception" is nothing more than a shorthand reference to an ultra vires claim, which is a recognized "exception" to the general rule of sovereign immunity. This is clear from the State's primary case authority on this issue: *Murphy Co. v. Biden*, 65 F.4th 1122, 1124-29 (9th Cir. 2023); *see also Pollack v. Hogan*, 703 F3d 117, 119-20 (D.C. Cir. 2012).

*Second*, the State also errs to the extent it suggests that *Murphy* establishes a standard (*i.e.*, "the relevant standard") for the State's ultra vires claims that is different and more permissive than the standard set forth in *NRC* and *Leedom*. (*See* Opp. at 19.) The State has simply seized upon a single sentence from *Murphy*, in which the Ninth Circuit generally describes an ultra vires claim — "[T]he Court has held that actions by subordinate Executive Branch officials that extend beyond delegated statutory authority – *i.e.*, ultra vires actions – are reviewable." — and then pretends as if that sentence alone expresses the governing standard. (*See* Opp. at 19.) However, *Murphy* does not establish a different standard, and it expresses no intent to do so. If *Murphy* had, in fact, established a different standard, it conflicts with the Supreme Court's clear holdings in *NRC*, 605 U.S. at 681 (cautioning that expanded ultra vires review would improperly allow an "end-run around" judicial review statutes).

*Third*, the D.C. Circuit recently rejected the same argument by another plaintiff that was attempting to "dilute" "the demanding standard" that applies to "*all*" ultra vires claims. *See Federal Express Corp. v. Department of Commerce*, 39 F.4th 756, 764-65 (D.C. Cir. 2022). As with the State here, FedEx argued that, because Congress did not "preclude all statutory judicial review" regarding the challenged executive actions, FedEx only needed to show that the Department of Commerce "exceeded its statutory authority" under a "deferential standard apparently akin to" *Chevron USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), *overruled* by *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). *See*

*Federal Express*, 39 F.4th at 764. After noting that FedEx's argument "defies precedent and logic," the D.C. Circuit provided a comprehensive review of the case law to explain why the argument was wrong and then reaffirmed its prior holdings that "ultra vires review imposes *the same demanding standard in all cases*, including those where only APA review is foreclosed." *Id.* at 764-66 (emphasis added). Consistent with *NRC* and *Leedom* (and Defendants' motion), the D.C. Circuit held that "an ultra vires claimant must show that the agency has acted 'in excess of its delegated powers and contrary to a specific prohibition' which is 'clear and mandatory.'" *Id.* at 764-65 (quoting *Leedom*, 358 U.S. at 188).

*Fourth*, the case law does not support the State's claim that *NRC* and *Leedom's* demanding standard applies only when an applicable statute bars all judicial review. *See, e.g.*, *NRC*, 605 U.S. at 681-82 (the Hobbs Act did not generally bar judicial review of NRC decisions; it simply limited who could bring such actions, namely, a "party aggrieved" by such decisions); *Pollack*, 703 F.3d at 121 (the relevant statute, 28 U.S.C. § 602, is silent on whether it precludes judicial review of decisions made by the Director of the Administrative Office of the Courts). Likewise, other cases cited by the State do not support its claim that a lower, more permissive standard applies to the ultra vires claims alleged in this case. For example, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582-86 (1952), does not even address the applicable standard governing an ultra vires claim, and *NRC* and *Leedom* do not identify *Youngstown* as an outlier or exception to the demanding standard they enunciate. *See also La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 359, 374-75 (1986) (this case does not contain any reference to ultra vires claims); and *Sierra Club v. Trump*, 963 F.3d 874, 891 (9th Cir. 2020), *vacated and remanded on other grounds, sub. nom. Biden v. Sierra Club*, 142 S. Ct. 46 (2021) (approving an ultra vires claim challenging the War Department's transfer of funds in violation of express statutory limits).

*Fifth*, contrary to the State's argument, the "Spending Clause" claim alleged in Count Three is also subject to *NRC* and *Leedom* because, in substance, it fails to state an actual Spending Clause claim, but only a hypothetical ultra vires claim. (*See* Compl., at 21-23.) The complaint states that Count Three is alleged "[i]n the alternative to Count Two" (*id.* ¶135), and both claims challenge Defendants' authority to issue the "Certification Demand Letter" and seek a declaration that LEAs do not have to comply with it (*compare id.* ¶¶ 130-33 *with* ¶¶ 135, 141-43). Count Two alleges that the Letter is an ultra vires act because it is "unconnected to any funding agreement" (*id.* ¶ 130), whereas Count Three alleges that the

Letter violates the Spending Clause (and is ultra vires in that sense) "*to the extent that* the [Letter] is *intended* to create a condition *on some as yet unidentified* federal funding" (*id.* ¶ 135). Because Count Three's core allegation is plainly hypothetical, not based on any wording in the "Certification Demand Letter," which makes no reference to federal funding, the suspension or termination thereof, or any statute tied to federal funding (*e.g.*, Title IX), it challenges, like Count Two, nothing more than Defendants' authority to issue a demand letter "unconnected" to federal funding. Accordingly, Count Three should also be dismissed for failing to comply with *NRC* and *Leedom*. Defendant's citation to *Arizona v. Yellen*, 34 F.4th 841 (9th Cir. 2022), is unavailing because *Yellen* has nothing to say about the application of ultra-vires rules to a hypothetical, faux Spending-Clause claim.

In conclusion, Counts Two and Three are subject to the requirements of *NRC* and *Leedom*, and they are legally insufficient. Both counts contain only a general allegation that there is no statute that authorizes DOJ to issue the demand letter. (*See, e.g.*, Compl. ¶¶ 131, 138-39.) That's not good enough. Under *NRC*, both claims are legally infirm because they do not affirmatively identify a "specific prohibition" in any statute or a constitutional provision that DOJ's Letter violates, and because the APA provides a "meaningful and adequate opportunity for judicial review" in the event Defendants' conduct progresses to a "final agency action." *NRC*, 605 U.S. at 681-83. Accordingly, both claims should be dismissed for failure to state a claim.[3]

## CONCLUSION

For all the forgoing reasons, the Court should dismiss the complaint in its entirety.

---

[3] Since the State asks, Defendants note that, separate and apart from their Title IX enforcement powers, the Attorney General and Assistant Attorney General have broad authority to enforce and investigate federal civil rights violations, and that surely includes the power to issue a letter requesting information relevant thereto. *See, e.g.*, 42 U.S.C. § 2000h-2 (authorizing AG to intervene in actions alleging equal protection violations); 42 U.S.C. § 2000c-6(a)(1) (authorizing AG to file civil action to address denials of equal protection in public school context); 28 C.F.R. § 0.50 (authorizing AAG to "[e]nforce[] … all Federal statutes affecting civil rights," including the "authorization of litigation in such enforcement" on behalf of the Government and "requesting and authorizing investigations," "[r]equesting and reviewing investigations arising from reports or complaints," "*[c]onsultation with* and assistance to other Federal departments and agencies and *State and local agencies on matters affecting civil rights*," and "[r]esearch on civil rights matters, and the making of recommendations to the Attorney General as to proposed policies and legislation relating thereto"); 28 C.F.R. § 0.51(b) (AAG is "responsible for coordinating the implementation and enforcement by Executive agencies of the nondiscrimination provisions of" Title IX and other federal statutes).